## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| STATE OF GEORGIA *ex rel* Deborah Saunders and Barry Boswell, et al, | | |
| Plaintiffs, | | CIVIL ACTION FILE NO. |
| v. | | 1:10-CV-3419-TWT-RGV |
| MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ET AL, | | |
| Defendants. | | |

## ORDER FOR SERVICE OF FINAL REPORT AND RECOMMENDATION

Attached is the Report, and Recommendation of the United States Magistrate Judge made in this action in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and this Court's Local Rule 72.  Let the same be filed and a copy, together with a copy of this Order, be served upon counsel for the parties.

Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections, if any, to the Report and Recommendation within fourteen (14) days of the receipt of this Order.  Should objections be filed, they shall specify with particularity the alleged error or errors made (including reference by page number to the transcript if applicable) and shall be served upon the opposing party.  The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing for review by the district court.  If no objections are filed, the Report and

Recommendation may be adopted as the opinion and order of the district court and any appellate review of factual findings will be limited to a plain error review. United States v. Slay, 714 F.2d 1093 (11th Cir. 1983) (per curiam).

The Clerk is directed to submit the Report and Recommendation with objections, if any, to the district court after expiration of the above time period.

**IT IS SO ORDERED**, this 11th day of March, 2011.

_Russell G. Vineyard_
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| STATE OF GEORGIA *ex rel* Deborah Saunders and Barry Boswell, et al, | |
| Plaintiffs, | CIVIL ACTION FILE NO. |
| v. | 1:10-CV-3419-TWT-RGV |
| MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ET AL, | |
| Defendants. | |

## <u>MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION</u>

Pending before the Court are motions to dismiss a complaint filed on behalf of the State of Georgia, as well as all counties in the State of Georgia, by plaintiffs Deborah Saunders and Barry Boswell ("plaintiffs").  Defendants JPMorgan Chase Bank, N.A. ("Chase"), The Bear Stearns Companies, LLC ("Bear Stearns"), Bank of America, N.A. ("Bank of America"), Countrywide Bank, F.S.B. ("Countrywide"),[1] Mortgage Electronic Registration Systems, Inc. ("MERS"), John Hancock Life Insurance Company ("John Hancock"), Fannie Mae, GMAC  Mortgage, LLC ("GMAC"), GE Capital, CitiMortgage, Inc. ("Citimortgage"), Wells Fargo Bank, N.A. ("Wells Fargo"), and Federal Home Loan Corporation ("Freddie Mac") moved to

---

[1] Incorrectly named in the complaint as "Countrywide Bank".

dismiss plaintiffs' complaint on December 13, 2010, [Docs. 52 & 69],[2] defendant Morgan Stanley & Co., Inc. ("Morgan Stanley"), moved to dismiss plaintiffs' complaint on December 27, 2010, [Doc. 62], and defendants Ginnie Mae ("GNMA"),[3] Commissioner David Stevens, and the U.S. Department of Veteran Affairs, collectively "the federal defendants," moved to dismiss plaintiffs' complaint on February 22, 2011, [Doc. 64].[4] Plaintiffs, proceeding *pro se*, have not responded to any of the motions to dismiss, and defendants' motions are therefore deemed unopposed. See LR 7.1, NDGa.[5] For the following reasons, it is **RECOMMENDED**

---

[2] Freddie Mac's motion to dismiss, [Doc. 69], was originally filed and docketed in case number 1:10-CV-3456-JEC, which was consolidated with this case on March 9, 2011. See [Doc. 70]; State of Georgia v. Mortg. Electronic Registration Sys., Civil Action File No. 1:10-CV-3456-JEC, [Doc. 8] (N.D. Ga. Dec. 16, 2010). Freddie Mac's motion is substantially identical to the motion, [Doc. 52], filed on the same date by Chase, Bear Stearns, Bank of America, Countrywide, MERS, John Hancock, Fannie Mae, GMAC, GE Capital, CitiMortgage, and Wells Fargo. See [Doc. 69 at 1 n.1].

[3] "GNMA is a corporation, wholly owned by the United States government, under the control and management of the Secretary of HUD." In re Adana Mortg. Bankers, Inc., 12 B.R. 977 (Bankr. N.D. Ga. 1980). See also Calhoun v. Fed. Nat'l Mortg. Ass'n, 823 F.2d 451, 452 (11th Cir. 1987) ("FNMA was reorganized in 1968 to create two separate corporations. . . . One corporation, Government National Mortgage Association (GNMA), remained a governmental agency, while the other corporation, a new FNMA, was created as a private corporation.") (citing 12 U.S.C. § 1717(a)(2)).

[4] All the defendants are hereinafter collectively referred to as "defendants."

[5] Although defendants' motions are unopposed, the undersigned will address the merits of the motions. See Watkins v. Beneficial, HSBC Mortg., Civil Action No. Civil Action No. 1:10-CV-1999-TWT-RGV, 2010 WL 4318898, at *1 (N.D. Ga. Sept. 2,

that defendants' motions to dismiss, [Docs. 52, 62, 64, & 69], be **GRANTED** and plaintiffs' complaint be **DISMISSED**.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs originally filed their complaint in the Superior Court of Fulton County, Georgia, on September 17, 2010.  [Doc. 1 ¶ 1; Doc. 1-1].  The complaint appears to challenge the legality of the formation and use of MERS by the defendants,[6] and asserts a *qui tam* cause of action for violations of the Racketeer and Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962 <u>et seq.</u>, as well as violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, <u>et seq.</u>; The Sarbanes-Oxley Act of 2002 ("Sarbanes-Oxley"), 15 U.S.C. § 7201 <u>et seq.</u>, and state law claims for fraud, theft by deception, and unjust enrichment.  <u>See generally</u> [Doc. 1-1].  Plaintiffs "seek[] recovery of the Intangible Recording Tax pursuant to O.C.G.A. § 48-6-60, O.C.G.A. § 48-6-61, O.C.G.A. § 48-6-66, O.C.G.A. § 48-6-65, O.C.G.A. § 48-6-68 and O.C.G.A. § 48-6-77," actual damages of $500 million,

---

2010), adopted by 2010 WL 4312878 (N.D. Ga. Oct. 21, 2010) (considering merits of defendant's motion even though it was unopposed); <u>Eley v. Morris</u>, 390 F. Supp. 913, 917-18 (N.D. Ga. 1975) (evaluating plaintiffs' motions on the merits despite defendants' failure to file responses in opposition).

[6] The thrust of the action is summed up in plaintiffs' comment: "[a]s the judiciary presides over the forced displacement of millions of American families from their homes, it is worthwhile to take a fresh look at the legal foundations of MERS' role in the land title recording and home foreclosure systems."  [Doc. 1-1 at 9].

punitive damages of $1.75 billion, and reimbursement for court costs.  [Id. at 4, 31]. Plaintiffs' complaint is an approximately thirty-page narrative that describes the historical background of MERS and alleges that the MERS system of electronic recordation and assignment was developed by the mortgage bankers' association (i.e., defendants) as a vehicle by which to fraudulently deprive counties of recordation fees, conceal the identity of mortgagees from consumers in foreclosure proceedings, and evade transfer taxes.  [Doc. 1-1 at 4-31].

Chase filed a notice of removal on October 21, 2010, [Doc. 1], and Freddie Mac filed a notice of removal on October 22, 2010, [Doc. 65].  The defendants now move to dismiss plaintiffs' complaint pursuant to Rules 4(m) and 12(b)(1), (5) and (6) of the Federal Rules of Civil Procedure, for failure to properly serve some defendants with process, failure to state a claim upon which relief may be granted against any defendant, and lack of standing.  [Doc. 52-1 at 1-2; Doc. 62-1 at 1-3; Doc. 64 at 1; Doc. 69-1 at 1-4].  The unopposed motions are now ripe for ruling.

## II.  DISCUSSION

### A.    Standing

"As a preliminary matter, plaintiffs have the burden to establish that they have standing to pursue their claims."  In re ING Groep, N.V. Erisa Litig., Civil Action No. 1:09-CV-0400, 2010 WL 1704402, at *4 (N.D. Ga. Mar. 31, 2010) (citing

<u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992)).  "Because the standing question goes to the court's jurisdiction, it is a threshold question that must normally be reviewed prior to the consideration of substantive questions."  <u>In re Olympia Holding Corp.</u>, 88 F.3d 952, 959 (11th Cir. 1996) (citing <u>Linda R.S. v. Richard D.</u>, 410 U.S. 614, 616 (1973). <u>See also</u> <u>Focus on the Family v. Pinellas Suncoast Transit Auth.</u>, 344 F.3d 1263, 1272 (11th Cir. 2003) (holding that standing must be addressed before other substantive issues "because it directly implicates federal subject matter jurisdiction") (citing <u>Nat'l Parks Conservation Ass'n. v. Norton</u>, 324 F.3d 1229, 1242 (11th Cir. 2003); <u>Fla. Ass'n of Rehab Facilities, Inc., v. Fla. Dep't of Health and Rehab. Servs.</u>, 225 F.3d 1208, 1227 n.14 (11th Cir. 2000)).  Defendants contend that the plaintiffs lack standing to bring this action.  [Doc. 52-1 at 8-13; Doc. 62-1 at 7; Doc. 69-1 at 8-13].

Plaintiffs have failed to show that they have standing because they cannot show that they have personally suffered any injury, and cannot pursue any of their claims as a *qui tam* action.  Accordingly, their case is due to be dismissed without prejudice at the outset without consideration of any of the merits of the underlying claims.  <u>See</u> <u>Stalley ex rel. U.S. v. Orlando Reg'l Healthcare System, Inc.</u>, 524 F.3d 1229, 1234-35 (11th Cir. 2008) (per curiam) (concluding "that [plaintiff] lacks standing because he has no injury in fact and because the [statute cited as a basis for

the suit] is not a *qui tam* statute," therefore "the district court lacked subject matter jurisdiction over the complaint, and it had no power to render a judgment on the merits" and "the district court should have dismissed the complaint without prejudice.") (citing Crotwell v. Hockman-Lewis Ltd., 734 F.2d 767, 769 (11th Cir. 1984)). See also Klos v. Paulson, 309 Fed. App. 322, 323 (11th Cir. 2009) (per curiam) (unpublished).

### 1.    Injury in Fact

"To establish constitutional standing, a plaintiff must demonstrate that he suffered injury in fact."  In re ING Groep, N.V. Erisa Litig., 2010 WL 1704402, at *4. An injury in fact is defined as "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical."  Lujan, 504 U.S. at 560 (internal marks and citations omitted). Plaintiffs here have alleged potential injury to the various counties within the state of Georgia, but they have not alleged facts that show they personally suffered any concrete, particularized, actual or imminent harm.  Because plaintiffs have alleged no injury-in-fact, they also necessarily fail to fulfill the other requirements of standing: traceability between their injury and defendants' actions, and redressability of that injury. See id. at 560-61.  They have therefore failed to establish any individual standing. In re ING Groep, 2010 WL 1704402, at *4-5.

6

### 2.    Requirements for *qui tam* action

The complaint is styled as a *qui tam* action in which plaintiffs purportedly sue not on behalf of themselves, but on behalf of the counties and the state of Georgia, however, they have failed to show any statutory basis for a *qui tam* action under the facts alleged.  See Stalley, 524 F.3d at 1233 (concluding that plaintiff lacked standing where he had demonstrated no injury in fact, and because "there is presently no common-law right to bring a *qui tam* action, which is strictly a creature of statute," plaintiff could not bring a *qui tam* action for violations of a statute that did not explicitly provide for such) (quoting Stalley v. Catholic Health Initiatives, 509 F.3d 517, 521 (8th Cir. 2007) (citation omitted)).  See also Alexander v. Citizens & S. Nat'l Bank, 92 S.E.2d 16, 17 (Ga. 1956) (absent some statutory exception, "an individual can not sue in his own name for the use and benefit of the State").  Furthermore, plaintiffs are proceeding *pro se*, and therefore may not prosecute a *qui tam* action even if they had alleged some statutory authority allowing it.  See Meidinger v. Healthcare Indust. Oligopoly, 391 Fed. App. 777, 780 (11th Cir. 2010) (per curiam) (unpublished); Timson v. Sampson, 518 F.3d 870, 873 (11th Cir. 2008) (per curiam) ("Those Circuits that have considered the issue have held that *pro se* relators may not prosecute *qui tam* actions.") (citations omitted).

7

Because plaintiffs lack standing, and have not adequately shown that they can pursue any of their claims as a *qui tam* action, the undersigned **RECOMMENDS** that plaintiffs' action be **DISMISSED WITHOUT PREJUDICE** without reaching the other issues briefed by defendants.  See Stalley, 524 F.3d at 1234-35; Klos, 309 Fed. App. at 323**.**  However, to be thorough, the undersigned will address the remaining arguments in defendants' motions to dismiss.

**B.   Service of Process**

Defendants argue that "at least one defendant, [Bear Stearns], has been made aware of the Complaint, but has never been served."  [Doc. 52-1 at 7].  Defendants also point out that the method of service was improper as to Morgan Stanley, Chase, Wells Fargo, Fannie Mae, Freddie Mac, MERS, Bank of America, CitiMortgage, GMAC, GE Capital, and John Hancock, all of which received copies of the summons and complaint via regular or certified mail.[7]  [Doc. 52-1 at 7; Doc. 62 at 1-2; Doc. 69-1 at 7].  These defendants seek dismissal of plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(5) and 12(b)(6).  The federal defendants move to dismiss plaintiffs' complaint solely under Federal Rule of Civil Procedure 4(m) on grounds that they were not properly served within 120 days.  [Doc. 64 at 3-4].

---

[7] Morgan Stanley also objects to the manner of service in that "it was performed by the Plaintiffs, who, as parties, are not authorized to serve process." [Doc. 62 ¶ 2].

"'Service of process is a jurisdictional requirement: a court lacks jurisdiction over the person of a defendant when that defendant has not been served.'" Igbinigie v. Wells Fargo Bank, N.A., No. 3:08-CV-58 (CDL), 2008 WL 4862597, at *1 (M.D. Ga. Nov. 10, 2008) (quoting Pardazi v. Cullman Med. Ctr., 896 F.2d 1313, 1317 (11th Cir. 1990)).  "It is therefore reversible error for a district court to address the merits of a cause of action when the plaintiff has failed to properly effect service of process in accordance with Federal Rule of Civil Procedure 4." Id. (quoting Jackson v. Warden, FCC Coleman-USP, 259 Fed. App. 181, 182-83 (11th Cir. 2007) (per curiam) (unpublished) ("'Because [plaintiff] failed to serve defendants properly, we find that this case should have been dismissed without prejudice.  It was, therefore, improper for the district court to have reached the merits in this case and to have issued a dismissal with prejudice.'") (alteration in original)).  See also In re S1 Corp. Sec. Litig., 173 F. Supp. 2d 1334, 1342 (N.D. Ga. 2001).  Therefore, the Court will first address the defendants' motions to dismiss due to insufficient process and insufficient service of process.

All defendants seeking dismissal under Federal Rule of Civil Procedure 12(b)(5) and 12(b)(6) are corporate entities, and under Federal Rule of Civil Procedure 4(h)(1), a corporation must be served in one of the following ways:  "(A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or (B) by

9

delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process . . ." "Unless the [corporate] defendant has waived service, the plaintiff must personally effect service upon the defendant, and service by mail is insufficient under 4(h)(1)(B)." Pelmore v. Pinestate Mortg. Corp., Civil Action File No. 1:09-CV-2313-TWT, 2010 WL 520767 at *2 (N.D. Ga. Feb. 8, 2010), adopted at *1 (citing Fed. R. Civ. P. 4(h)(1)(B); Dyer v. Wal-Mart Stores, Inc., 318 Fed. App. 843, 844 (11th Cir. 2009) (per curiam) (unpublished)).

"[S]ervice may be made by 'following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made.'" Id. (quoting Fed. R. Civ. P. Rule 4(e)(1)). Under Georgia state law, service on a corporate defendant by mail is "insufficient as a matter of law" because "[t]here is no provision in Georgia law which authorizes a party to serve a defendant corporation *directly* by certified or registered mail" except for certain circumstances, not applicable here, in which service may be made through the Secretary of State. KMM Indus., Inc. v. Prof'l Ass'n Inc., 297 S.E.2d 512, 513 (Ga. Ct. App. 1982). "[T]he serving party . . . bears the burden of proof with regard to validity of service." Anderson v. Dunbar Armored, Inc., 678 F. Supp. 2d 1280, 1296 (N.D. Ga. 2009), adopted at *1290 (citations omitted).

To serve a United States government agency or officer, like the federal defendants, Federal Rule of Civil Procedure 4(i)(1) requires plaintiffs to:

> (A)   (i) deliver a copy of the summons and of the complaint to the United States attorney for the district where the action is brought--or to an assistant United States attorney or clerical employee whom the United States attorney designates in a writing filed with the court clerk--or
>
> (ii) send a copy of each by registered or certified mail to the civil-process clerk at the United States attorney's office;
>
> (B) send a copy of each by registered or certified mail to the Attorney General of the United States at Washington, D.C.; and
>
> (C) if the action challenges an order of a nonparty agency or officer of the United States, send a copy of each by registered or certified mail to the agency or officer.

To serve a United States agency, corporation, or a United States officer in his official capacity, Rule 4(i)(2) requires a plaintiff to "serve the United States and also send a copy of the summons and of the complaint by registered or certified mail to the agency, corporation, officer, or employee."  Fed. R. Civ. P. 4(i)(2).

"Under Fed. R. Civ. P. 4(m), a plaintiff must serve the complaint within 120 days of filing it."  Davis v. Mortg. Elec. Registration Sys., Inc., Civil Action No. 1:09-CV-3109-TWT-CCH, 2010 WL 1529319, at *2 (N.D. Ga. Mar. 2, 2010), adopted by 2010 WL 1529307, at *1 (N.D. Ga. Apr. 13, 2010).  "The 120-day time limit imposed by Rule 4(m) expires 120 days after the *first* complaint in which the defendant is

named, however," and "does not restart each time a plaintiff files a new amended complaint." Rudolph v. UT Starcom, Inc., No. C 07-04578 SI, 2009 WL 248370, at *2 (N.D. Cal. Feb. 2, 2009) (citation omitted). See also Morrison v. Morgan Stanley Props., No. 06-80751-CIV, 2008 WL 1771869, at *2 (S.D. Fla. Apr. 15, 2008). "Failure to comply with this rule will result in dismissal of the complaint without prejudice unless the plaintiff can show good cause why service was not made within that period." Davis, 2010 WL 1529319, at *2 (citing Fed. R. Civ. P. 4(m)).

Plaintiffs filed their complaint in state court on September 17, 2010, and the case was removed on October 21, 2010. [Doc. 1]. When a case is removed from state to federal court, the 120 days begins anew upon removal. Dees v. Wash. Mut. Bank, Civil Action No. 3:10-CV-0045 (CAR), 2010 WL 5349865, at *5 (M.D. Ga. Dec. 21, 2010) ("the 120-day time limit for perfecting service under the Federal Rules of Civil Procedure would begin to run when [a case] is removed from state court.") (citing Buckley v. Bayrock Mortg. Corp., Civil Action File No. 1:09-CV-1387-TWT, 2010 WL 476673, at *14 n. 6 (N.D. Ga. Feb. 5, 2010), adopted at *1; Igbinigie, 2008 WL 4862597, at *3). Therefore, the period for service expired on February 18, 2011, and nothing is before the Court to show that plaintiffs properly served any of the defendants objecting to service of process before this date.[8]  Plaintiffs, who bear the burden of

---

[8] Bear Stearns, Morgan Stanley, Chase, Wells Fargo, Fannie Mae, Freddie Mac, MERS, Bank of America, CitiMortgage, GMAC, GE Capital, and John Hancock aver

showing that service was waived or properly effected, have not responded to defendants' motions.  "Where, as here, plaintiff[] failed to serve [defendants] properly within the [120-day] period allotted under the Federal Rules of Civil Procedure, 'the court - on motion or on its own initiative after notice to the plaintiff– must dismiss the action without prejudice against that defendant or order that service be effected within a specified time.'"  Anderson, 678 F. Supp. 2d at 1296 (quoting Fed. R. Civ. P. 4(m)).  "'But if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.'"  Id. (quoting Fed. R. Civ. P. 4(m)).

Plaintiffs have not properly served those defendants objecting to service of process, have not sought an extension of time in which to serve any defendant, and have not responded to the motions to dismiss for failure to effect proper service.[9]

---

that they received copies of the summons and complaint by mail, which is insufficient under the Federal rules and Georgia state law.  See Pelmore, 2010 WL 520767, at *3.  The federal defendants state that plaintiff has "wholly failed to serve the federal defendants, including failing to serve the United States Attorney for the Northern District of Georgia, with the Complaint and a summons by February 18, 2011."  [Doc. 64 at 4].

[9] If a plaintiff "fails to show good cause for failing to timely effect service, a court 'must still consider whether any other circumstances warrant an extension of time based on the facts of the case.'"  Duncan v. CCA McRae Corr. Facility, No. CV 308-047, 2009 WL 1151620, at *1 (S.D. Ga. Apr. 27, 2009), adopted at *1 (quoting Lepone-Dempsey v. Carroll Cnty. Comm'rs, 476 F.3d 1277, 1282 (11th Cir. 2007)).  "Nevertheless, the decision to extend the time for service is within the Court's sound discretion."  Id.  Given the nature of the complaint and the numerous deficiencies

Because 120 days have now passed since the case was removed to this Court, should the District Court reach the issue, the undersigned **RECOMMENDS** that the claims against Bear Stearns, Morgan Stanley, Chase, Wells Fargo, Fannie Mae, Freddie Mac, MERS, Bank of America, CitiMortgage, GMAC, GE Capital, John Hancock, and the federal defendants be **DISMISSED WITHOUT PREJUDICE** for plaintiffs' failure to perfect service of process.

## C.   Viability of Plaintiffs' Claims

Defendants argue that plaintiffs' complaint should be dismissed because it fails to state any viable legal claim against any defendant, and is therefore defective as a matter of law.  For the following reasons, the undersigned agrees that, even if the plaintiffs had standing, their complaint would be subject to dismissal on the merits as to the defendants properly served for failure to state any viable claim.

### 1.   Standard

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of an action when the complaint fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In considering a motion to dismiss, the court must accept the plaintiffs' allegations as true and construe the complaint in the plaintiffs' favor. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Duke v. Cleland, 5 F.3d 1399, 1402

---

discussed hereinafter, the circumstances do not warrant any extension of time for plaintiffs to effect proper service.

(11th Cir. 1993).  "Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'  The complaint need only provide enough information to give a defendant fair notice of the plaintiffs' claim and the grounds the claim is based on."  Broner v. Wash. Mut. Bank, FA, 258 Fed. App. 254, 256 (11th Cir. 2007) (per curiam) (unpublished) (quoting Fed. R. Civ. P. 8(a)(2)).[10]

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiffs' obligation to provide the grounds of [her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal marks and citations omitted).  To survive a motion to dismiss, a complaint must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Id. at 555 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  "Factual allegations must be enough to raise a right to relief above the speculative level," id., as the complaint must contain "enough facts to state a claim to relief that is plausible on its face," id. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

---

[10] Likewise, Federal Rule of Civil Procedure 10(b) requires that claims be set forth in numbered paragraphs, "each limited as far as practicable to a single set of circumstances."  Fed. R. Civ. P. 10(b); Cooley v . Great S. Wood Preserving, 138 Fed. App. 149, 152 (11th Cir. 2005) (per curiam) (unpublished) (citations omitted).

draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 556). The Supreme Court in Iqbal held:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not "show[n]"–"that the pleader is entitled to relief."

129 S. Ct. at 1949-50 (internal marks and citations omitted).

Furthermore, although *pro se* pleadings are governed by less stringent standards than pleadings prepared by attorneys, see Haines v. Kerner, 404 U.S. 519, 520 (1972); Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam), *pro se* parties are still required to comply with minimum pleading standards set forth in the Federal Rules of Civil Procedure and this district's Local Rules, Grew v. Hopper, No. 2:07-cv-550-FtM-34SPC, 2008 WL 114915, at *2 (M.D. Fla. Jan. 9, 2008). See also Beckwith v. Bellsouth Telecomms., Inc., 146 Fed. App. 368, 371 (11th Cir. 2005) (per curiam) (unpublished) (stating "[a]lthough we construe

them liberally, *pro se* complaints also must comply with the procedural rules that govern pleadings").

### 2.    Failure to Plead Fraud Claim

"[W]hen a complaint is grounded in fraud, as it appears plaintiff[s'] complaint is, the complaint must comply with Fed.R.Civ.P. 9(b)'s heightened pleading requirement that [i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Roundtree v. Countrywide Home Loans, Inc., No. 3:09-cv-189-J-32TEM, 2009 WL 5215334, at *4 (M.D. Fla. Dec. 29, 2009) (alteration in original) (internal marks and citation omitted). "To satisfy Rule 9(b)'s 'particularity' standard, a complaint should 'identify (1) the precise statements, documents or misrepresentations made; (2) the time and place of and persons responsible for the statement; (3) the content and manner in which the statements misled the plaintiff; and (4) what the [d]efendants gain[ ] by the alleged fraud.'" Id. (quoting W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc., 287 Fed. App. 81, 86 (11th Cir. 2008) (per curiam) (unpublished) (citation omitted)).

Plaintiffs' complaint is grounded entirely in fraud in that it alleges an overarching conspiracy by the defendants to defraud Georgia counties of tax revenue, but plaintiffs have failed to plead with particularity a fraud claim

17

anywhere in their complaint, and have therefore failed to satisfy Federal Rule of Civil Procedure 9(b).  Plaintiffs' complaint merely lists general allegations against all defendants, without identifying which defendant is liable for any particular act of fraud against any particular plaintiff.  See Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc., 162 F.3d 1290, 1333 (11th Cir. 1998).  See also Clausell v. Bank of Am., N.A., Civil Action No. 1:10-CV-0618-CAP-JFK, at [Doc. 17], (N.D. Ga. July 20, 2010), adopted at [Doc. 18], (N.D. Ga. August 17, 2010).  A defendant faced with these sweeping, generalized allegations could not reasonably be expected to know where to begin to raise a defense, and plaintiffs' complaint is therefore due to be dismissed on this basis as well.  McWhorter v. Miller, Einhouse, Rymer & Boyd, Inc., No. 6:08-cv-1978-Orl-31KRS, 2009 WL 92846, at *2 (M.D. Fla. Jan. 14, 2009) (citation omitted).  See also Davis v. Coca Cola Bottling Co. Consol., 516 F.3d 955, 983-84 (11th Cir. 2008); Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll., 77 F.3d 364, 367 & n.5 (11th Cir. 1996); Roundtree, 2009 WL 5215334, at *4.  Should the District Court reach the merits of the remaining arguments raised in defendants' briefs, there are additional grounds upon which it is recommended that this action be dismissed.

### 3.    Merits of Plaintiffs' Claims

#### a.    *FDCPA Claim*

In order to prevail on a FDCPA claim, plaintiffs must establish that:

18

> (1) [they] ha[ve] been the object of collection activity arising from a consumer debt; (2) the defendant attempting to collect the debt qualifies as a "debt collector" under the Act; and (3) the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the FDCPA.

Beadle v. Haughey, No. Civ. 04-272-SM, 2005 WL 300060, at *2 (D.N.H. Feb. 9, 2005) (quoting Russey v. Rankin, 911 F. Supp. 1449, 1453 (D.N.M. 1995) (citation omitted) (alterations in original)).  Plaintiffs only generally allege that "MERS' Foreclosure Efforts Implicate the [FDCPA]," and the portion of the complaint referencing the FDCPA reads like a scattered outline of the law, its application, and its history.  See [Doc. 1-1 at 13-15].  In this regard, plaintiffs' complaint utterly fails to state a violation of the FDCPA.[11]  Moreover, plaintiffs have failed to allege that MERS or any of the defendants are debt collectors within the meaning of the statute.  See 15 U.S.C. § 1692a(6); Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir. 1985).  See also Humphrey v. Wash. Mut. Bank, F.A., Civil Action No. 1:06-CV-1367-JOF, 2007 WL 1630639, at *2 (N.D. Ga. June 1, 2007) ("Plaintiffs' [FDCPA] claim fails because that Act applies only to debt collectors and not to creditors or mortgage servicers."); Sabeta v. Baptist Hosp. of Miami, Inc., 410 F. Supp. 2d 1224, 1242 (S.D. Fla. 2005);

---

[11] Indeed, plaintiffs acknowledge that the FDCPA's "application to MERS, the country's leading home mortgage foreclosure specialist, remains unsettled." [Doc. 1-1 at 14].

<u>Trent v. Mortg. Elec. Registration Sys., Inc.</u>, 618 F. Supp. 2d 1356, 1360 (M.D. Fla. 2007).

Furthermore, to the extent plaintiffs are complaining of activity related to a foreclosure, the Eleventh Circuit has held that "foreclosing on a security interest is not debt collection activity for purposes of [15 U.S.C.] § 1692g."   <u>Warren v. Countrywide Home Loans, Inc.</u>, 342 Fed. App. 458, 460 (11th Cir.) (per curiam) (unpublished) ("[S]everal courts have held that an enforcer of a security interest, such as a [mortgage company] foreclosing on mortgages of real property . . . falls outside the ambit of the FDCPA. . . .") (internal marks and citations omitted)). Because plaintiffs have asserted only vague and conclusory allegations of violations of the FDCPA, and "since foreclosing on a home is not debt collection for purposes of § 1692g," <u>see id.</u>, they fail to state a FDCPA claim upon which relief can be granted, and it is **RECOMMENDED** that any of plaintiffs' claims premised on violations of the FDCPA be **DISMISSED**.

   **b.** *Intangible Recording Tax Act*

Plaintiffs claim damages under the Intangible Recording Tax Act, O.C.G.A. § 48-6-60 <u>et seq.</u>, and assert other causes of action for fraud, theft by deception, unjust enrichment, RICO, and violations of Sarbanes-Oxley premised upon violations of this statute.  O.C.G.A. § 48-6-61 provides that:

> Every holder of a long-term note secured by real estate shall, within 90 days from the date of the instrument executed to secure the note, record the security instrument in the county in which is located the real estate conveyed or encumbered or upon which a lien is created to secure the note and shall present, prior to presenting the instrument to the clerk of superior court for recording, the security instrument to the collecting officer of the county in which the real estate is located. The collecting officer shall determine from the face of the security instrument the date of execution of the instrument, the maturity date of the note, and the principal amount of the note. There is imposed on each instrument an intangible recording tax at the rate of $1.50 for each $500.00 or fraction thereof of the face amount of the note secured by the recording of the security instrument. The collecting officer shall collect the tax due on the security instrument from the holder of the instrument; provided, however, the holder may pass on the amount of such tax to the borrower or mortgagor but the amount of such tax passed to the borrower or mortgagor shall not be considered or treated as part of any finance charge imposed by the holder in connection with the loan transaction. . . .

Other code sections of the Intangible Recording Tax Act cited by plaintiffs include:

O.C.G.A. § 48-6-65, which provides that "[n]o tax other than as provided for in this article shall be required to be paid on any instrument which is an extension, transfer, assignment, modification, or renewal of, or which only adds additional security for, any original indebtedness or part of original indebtedness secured by an instrument subject to the tax imposed by Code Section 48-6-61"; O.C.G.A. § 48-6-66, which requires correct information be set forth on instruments encumbering or conveying

real estate;[12] O.C.G.A. § 48-6-68, which requires "[a]ny seller of real estate who retains title to the real estate as security for the purchase price and who does not convey title to the purchaser or take back a deed to secure debt shall execute and deliver to the purchaser a bond for title which shall correctly set forth the unpaid portion of the purchase price and the maturity of the indebtedness"; and O.C.G.A. § 48-6-77, which specifies that "Failure to pay the tax levied by this article shall constitute a bar to the collection by any action, foreclosure, the exercise of any power of sale, or otherwise of the indebtedness secured by any instrument required by this article to be recorded, whether the instrument is held by an original party to the instrument or by a transferee."

However, none of these statutes explicitly provide a private or *qui tam* right of action for damages, and plaintiffs cite no authority, and this Court is aware of none, interpreting these statutes in such a way as to allow an implicit private right of action.  Furthermore, it is unclear from the complaint exactly how any of the defendants violated any provision of these statutes.  Though O.C.G.A. § 48-6-61 requires recordation and payment of fees on long-term notes secured by real estate within 90 days, defendants point out that O.C.G.A. § 48-6-65 provides that taxes and fees need not be paid on transfers, assignments, modifications, refinances, or

_____

[12] The willful violation of O.C.G.A. § 48-6-66 is a misdemeanor. O.C.G.A. § 48-6-67.

renewals under certain circumstances that apply to the set of facts alleged.   In

essence, defendants argue that MERS is legal, and plaintiffs have not responded to

defendants' motions to explain how the defendants violated any part of the

Intangible Recording Tax Act or how the Act applies to any part of their claim.

Because the plain language of the  Intangible Recording Tax Act does not appear to

allow enforcement by private litigants or *qui tam* relators, and further because no

violation of the Intangible Recording Tax Act is apparent from the face of the

complaint, it is **RECOMMENDED** that all of plaintiffs' claims premised on a

violation of these statutes be **DISMISSED**.

### c.   *Fraud*

As discussed *supra*, plaintiffs have failed to adequately plead a fraud claim

with particularity according to the requirements of Federal Rule of Civil Procedure

9(b).  However, plaintiffs' fraud claim is not only procedurally deficient under the

Federal Rules, it also fails to state a claim under Georgia law.  The essential elements

of fraud that must be pled are: "(1) a false representation by the defendant; (2)

scienter; (3) an intent to induce the plaintiff to act or refrain from acting; (4)

justifiable reliance by the plaintiff; and (5) damage to the plaintiff proximately

caused by the reliance."  Am. Casual Dining, L.P. v. Moe's Sw. Grill, L.L.C., 426 F.

Supp. 2d 1356, 1364 (N.D. Ga. 2006) (citations omitted).

Plaintiffs' complaint does not identify any specific false information provided to any plaintiff by any particular defendant, contains no details about the alleged misrepresentations that constitute the fraud, and instead rests on sweeping, conclusory allegations about the course of conduct of the entire mortgage banking industry over a period of years.  Plaintiffs have not stated, except in the most general terms, how they or any other party relied on any alleged misrepresentations or how the misrepresentations or fraudulent acts damaged them or any other in any way. See Prime Mgmt. Consulting & Inv. Servs., LLC v. Certain Underwriters at Lloyd's London, No. 1:07-cv-1578-WSD, 2007 WL 4592099, at *8 (N.D. Ga. Dec. 28, 2007). Accordingly, plaintiffs have failed to state a viable fraud claim, and it is **RECOMMENDED** that plaintiffs' fraud claims be **DISMISSED.**

### d.     *Theft by Deception*

Theft by deception in Georgia is defined by statute, O.C.G.A. § 16-8-3(a), as "obtain[ing] property by any deceitful means or artful practice with the intention of depriving the owner of the property."  However, criminal statutes are generally not enforceable by private parties unless that statute provides an exception.  Am. Gen. Life & Accident Ins. Co. v. Ward, 509 F. Supp. 2d 1324, 1330 (N.D. Ga. 2007) ("Under Georgia law, the violation of a criminal statute 'does not automatically give rise to a civil cause of action.'") (citing Oswald v. Am. Nat'l Can Co., 392 S.E.2d 26, 27 (Ga.

24

Ct. App. 1990)).  Plaintiffs' complaint invokes O.C.G.A. § 16-8-2, and 3, [Doc. 1-1 at 17, 24], which are criminal statutes that do not provide for any private cause of action.  Oswald, 392 S.E.2d at 27.   Therefore, any attempt by plaintiffs to state a claim under these statutes is due to be **DISMISSED**.  Id.

    **e.**  *Unjust Enrichment*

  "Unjust enrichment is an equitable concept and applies when as a matter of fact there is no legal contract, but when the party sought to be charged has been conferred a benefit by the party contending an unjust enrichment which the benefitted party equitably ought to return or compensate for." St. Paul Mercury Ins. Co. v. Meeks, 508 S.E.2d 646, 648 (Ga. 1998) (internal marks and citation omitted). Here, plaintiffs have not alleged that they or any other party have conferred a benefit upon any of the defendants for which a quasi-contractual remedy is appropriate.  Instead, their complaint hinges on a theory that various counties and the state of Georgia have been deprived of tax revenue as a result of defendants' conduct.  Accordingly, they have not pleaded an unjust enrichment claim under Georgia law, and any such claim is due to be **DISMISSED**.

    **f.**  *RICO*

  "[I]n order to establish a federal civil RICO violation under § 1962(c), the plaintiffs must satisfy four elements of proof: (1) conduct (2) of an enterprise (3)

through a pattern (4) of racketeering activity." <u>Williams v. Mohawk Indus., Inc.</u>, 465 F.3d 1277, 1282 (11th Cir. 2006) (per curiam) (internal marks and citations omitted). Here, plaintiffs have failed to show a pattern of racketeering activity, and therefore their RICO claims fail. "A 'pattern of racketeering activity,' for purposes of the RICO Act, 'requires at least two acts of racketeering activity.'" <u>Id.</u> (quoting <u>Cox v. Adm'r U.S. Steel & Carnegie</u>, 17 F.3d 1386, 1397 (11th Cir. 1994)). "An act of racketeering is commonly referred to as a 'predicate act.'" <u>Id.</u> "A 'pattern' of racketeering activity is shown when a racketeer commits at least two distinct but related predicate acts." <u>Id.</u> (quoting <u>Maiz v. Virani</u>, 253 F.3d 641, 671 (11th Cir. 2001)). "Acts that are part of the same scheme or transaction can qualify as distinct predicate acts, as long as each act constitutes a separate violation of the state or federal statute governing the conduct in question." <u>Cox</u>, 17 F.3d 1386 at 1397 (internal marks and citations omitted).

However, as discussed, plaintiffs have failed to adequately allege a violation of any statute or to adequately allege fraud. Furthermore, defendants have cited other cases with similar facts in which courts have concluded that general allegations of fraud and conspiracy against defendants associated with the mortgage lending industry and MERS are not viable claims,[13] and in which plaintiffs have

---

[13] <u>See</u> <u>Kiah v. Aurora Loan Servs., LLC</u>, No. 10-40161-FDS, 2010 WL 4781849, at *4-5 (D. Mass. Nov. 16, 2010); <u>In re Mortg. Electronic Registration Sys. (MERS)</u>

failed for similar reasons to plead RICO violations.[14]   Plaintiffs have failed to distinguish any of these cases, and it is therefore **RECOMMENDED** that plaintiffs' RICO claims be **DISMISSED**.

### g.    *Sarbanes-Oxley Act*

Plaintiffs have not clearly stated which section of Sarbanes-Oxley they are invoking to support their cause of action, and their complaint merely summarizes sections 302, 401, 404, 409 and 802, which appear to be copied verbatim from a Sarbanes-Oxley website.  Compare [Doc. 1-1 at 29-30], with The Sarbanes-Oxley Act 2002, http://www.soxlaw.com (last visited Jan. 31, 2011).  Nor have plaintiffs stated which defendants engaged in particular acts that violate any of these sections.[15]

---

Litig., No. 09-2119-JAT, 2010 WL 4038788, at *7-8 (D. Ariz. Sept. 30, 2010) (holding that "[t]he MERS system is not fraudulent"); Cervantes, et al. v. Countrywide Home Loans, Inc., et al., No. CV 09-517-PHX-JAT, 2009 WL 3157160, at *10 (D. Ariz. Sep. 24, 2009); Trevino v. Merscorp, Inc., 583 F. Supp. 2d 521, 530 (D. Del. Sept. 30, 2008).

[14] See Walters v. Fid. Mortg. of Ca., No. S-09-3317 FCD/KJM, 2010 WL 3069341, at *22 (E.D. Cal. Aug. 4, 2010) (dismissing RICO claim against mortgage lender for failure to "plead sufficient facts to identify an enterprise distinct from [the loan servicer defendant] in its role as defendant" and failure to plead with particularity allegations of any predicate acts committed by other defendants alleged to be part of the RICO "enterprise"); Rush v. Am. Home Mortg., Inc., Civil Action No. WMN-07-CV-0854, 2010 WL 1418000, at *3 (D. Md. Apr. 6, 2010) (*pro se* plaintiffs' RICO claim dismissed for failure to adequately plead RICO allegations against MERS and associated mortgage lenders).

[15] Regarding defendants' conduct, the complaint makes only the impenetrable assertion that "[t]he Defendants' lack of disclosures prove that omitted information was in effort to divert paying fees and taxes is a violation of the Sarbanes-Oxley

Accordingly, as discussed *supra*, plaintiffs' claim is due to be dismissed for failing

to comply with the standards of Federal Rule of Civil Procedure 8.  Furthermore,

Sarbanes-Oxley only applies to publicly held companies.  See Brady v. Calyon Secs.

(USA), 406 F. Supp. 2d 307, 317 (S.D.N.Y. 2005).  Defendants point out that MERS is

a privately held company, [Doc. 52 at 23], and plaintiffs have failed to allege which,

if any, of the defendants are publicly held, and therefore subject to compliance with

Sarbanes-Oxley.[16]

Additionally, while it is unclear whether Sarbanes Oxley creates any private

right of action, if it does so, it is only in the context of recovery of profits from

insider trading or to protect whistle blowers.  See Mehlenbacher ex rel. Asconi Corp.

v. Jitaru, No. 6:04CV1118ORL-22KRS, 2005 WL 4585859, at *7 (M.D. Fla. June 6, 2005)

(citing In re Cree, Inc. Sec. Litig., 333 F. Supp. 2d 461, 478 (M.D.N.C. 2004); In re

Interpublic Sec. Litig., No. 02 Civ.6527(DLC), 03 Civ.1194(DLC), 2004 WL 2397190,

at *9 (S.D.N.Y. Oct. 26, 2004) (in which "[t]he judge characterized the plaintiffs' claim

as 'perilously weak,' due in part to doubt 'whether plaintiff even has standing to

---

Act." [Doc. 1-1 at 28].  Plaintiffs also state: "[a]s we the plaintiffs and advocates seek
relief for the benefit of taxpayers, homeowners and local government, MERS and
Defendants by its own admission of accepted policies have failed to protect and
keep public interest in open and fair practices as required by Sarbanes-Oxley Act."
[Id.].

[16] Plaintiffs' complaint reflects a misunderstanding of the law in that it states:
"[t]he Sarbanes-Oxley Act of 2002 is mandatory.  ALL organizations, large and
small, MUST comply."  [Doc. 1-1 at 29].

bring a claim against defendants . . . under the Sarbanes-Oxley Act, since, unlike other Sarbanes-Oxley provisions, Section 304 does not expressly provide a private right of action.'"). Because of the aforementioned defects in pleading, and because nothing in plaintiffs' complaint appears related to either insider trading or whistle blower activity, any claim premised on defendants' alleged violations of Sarbanes-Oxley is due to be **DISMISSED**. Id.

### III.  CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that defendants' motions to dismiss, [Docs. 52, 62, 64 & 69], be **GRANTED**, and that plaintiffs' complaint be **DISMISSED WITHOUT PREJUDICE** because plaintiffs lack standing to pursue their claims.  Alternatively, should the District Court proceed past the issue of standing, the undersigned **RECOMMENDS** that the claims against Bear Stearns, Morgan Stanley, Chase, Wells Fargo, Fannie Mae, Freddie Mac, MERS, Bank of America, CitiMortgage GMAC, GE Capital, John Hancock, and the federal defendants be **DISMISSED WITHOUT PREJUDICE** for plaintiffs' failure to perfect service of process, and that the claims against all remaining defendants be **DISMISSED WITH PREJUDICE**.

IT IS SO ORDERED AND RECOMMENDED this 11th day of March, 2011.

RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE